Joseph M.R. Covey (7492) (*jcovey@parrbrown.com*)
Thomas M. Melton (4999) (*tmelton@parrbrown.com*)
Robert G. Wing (4445) (*rwing@parrbrown.com*)
Claire M. McGuire (17678) (*cmcguire@parrbrown.com*)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Jonathan O. Hafen, Receiver*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>vs.<br><br>Peter W. Guyon, Peter W. Guyon PC Retirement Plan, Peter W. Guyon PC, Attorney at Law, Dr. Peter W. Guyon, Jr., Elisabeth Guyon, Russ and Kathleen Mouritsen, Bert and Catherine Van Uitert, Silver Spoon Delivery, Inc., and Flash 1 TV, Inc.,<br><br>Defendants. | **COMPLAINT**<br>(Ancillary Suit-General Order 19-001)<br><br>Case No.<br><br>Honorable Tena Campbell |

Jonathan O. Hafen (the "Receiver"), in his capacity as Court-appointed Receiver over the assets of Rust Rare Coin, Inc. ("RRC"), Gaylen Dean Rust, R. Legacy Racing inc., R Legacy Entertainment LLC, and R Legacy Investments, LLC (Collectively, the "Receivership Defendants'), hereby alleges, avers, and complains of Defendants Peter W. Guyon, Peter W. Guyon, PC Retirement Plan, Peter W. Guyon PC, Attorney at Law, Dr. Peter W. Guyon, Jr., Elisabeth Guyon, Russ and Kathleen Mouritsen, and Bert and Catherine Van Uitert, Silver Spoon Delivery, Inc., and Flash 1 TV, Inc. (collectively, the "Defendants") as follows:

1

4878-4522-7364

**INTRODUCTION**

1. The Receivership Defendants operated a Ponzi scheme since at least 2008 by soliciting funds from investors in violation of federal commodities and state securities laws and using the funds obtained for their own use or to pay bogus returns to earlier investors.

2. During the Ponzi scheme, the Receivership Defendants made numerous material misrepresentations and omissions, misappropriated investor, and other funds, and committed fraud as a commodity pool operator.

3. On November 3, 2018, the Commodities Futures Trading Commission ("CFTC) and the Utah Division of Securities ("DOS") filed a Complaint against the Receivership Defendants in the United States District Court for the District of Utah, Civil No. 2:18-cv-00892-TC-DBP (the "CFTC Action").[1]

4. THE CFTC and DOS allege that the Receivership Defendants fraudulently solicited over $200 million from investors who they tricked into believing that the Receivership Defendants were purchasing silver at lower prices and selling it for a profit (the "Silver Pool").

5. Defendants also told purchasers that Receivership Defendants would store silver on their behalf in physical form.

6. There was, in fact, no Silver Pool and only a minimal inventory of silver.  Instead, the Receivership Defendants operated a massive Ponzi scheme whereby they used money from new investors and purchasers to pay fictitious returns or other payments to earlier investors and purchasers.

---

[1] The CFTC and DOS filed an amended complaint in the CFTC Action on December 6, 2018.

4878-4522-7364

7. On November 15, 2018, the Receiver was appointed by this Court to identify, collect, and preserve the assets of the Receivership Estate for the benefit of the estate's creditors, including hundreds of defrauded investors and others.

8. The instant action is brought by the Receiver as part of his continuing duty to: (1) recapture and return investor and other funds that were sent or paid to the Receivership Defendants and then diverted during their Ponzi scheme, and (2) avoid fraudulent transfers of property belonging to the Receivership Defendants.

## PARTIES, JURISDICTION, AND VENUE

9. Jonathan O. Hafen was appointed November 15, 2018, as receiver for the assets of the Receivership Defendants in the CFTC Action.

10. Peter W. Guyon (Guyon") is a lawyer in Salt Lake City and a recipient of funds from the Receivership Defendants.

11. Peter W. Guyon, P.C., Attorney at Law is an entity through which Guyon represented the Receivership Defendants and Gaylen Rust.

12. The Peter W. Guyon PC Retirement Plan is an entity through which Guyon invested with the Receivership Defendants.

13. Elisabeth L. Guyon is a Utah resident and Guyon's daughter. She received funds from the Receivership Defendants.

14. Dr. Peter W. Guyon Jr. is a Utah resident and Peter Guyon's son. He received funds from the Receivership Defendants.

15. Russ and Kathleen Mouritsen are Utah citizens and purchased an interest in the Silver Group. They received funds from the Receivership entities.

4878-4522-7364

16. Bert and Catherine Van Uitert are Utah residents and purchased an interest in the Silver Group.  Catherine Van Uitert is Guyon's daughter.  Bert and Catherine Van Uitert received funds from the Receivership entities.

17. Flash 1 TV, Inc. is defunct Utah corporation located in Salt Lake City, Utah.  Guyon was a director of Flash 1 TV, Inc.  This entity received funds from the Receivership entities.

18. Silver Spoon Delivery, Inc. is a Utah corporation located in Midvale, Utah.  This entity received funds from the Receivership Defendants.

19. Guyon, Peter W. Guyon, P.C., Attorney At Law, Peter W. Guyon PC Retirement Plan, Elisabeth L. Guyon , Dr. Peter W. Guyon, Jr., Russ and Kathleen Mouritsen, Bert and Catherine Van Uitert, Flash 1 TV, Inc., Silver Spoon Delivery, Inc. are collectively known as "Guyon Defendants".

20. The Court has jurisdiction over the subject matter of this action because it is ancillary to the CFTC Action and the appointment of the Receiver by this Court.

21. Defendants have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court.  Personal jurisdiction is also proper pursuant to 28 U.S.C. §§ 754, 1692.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 754.

## THE RECEIVER, STANDING, AND STATUS OF THE CFTC ACTION

23. On November 15, 2018, in the CFTC Action, this Court entered an Order Granting Plaintiffs' Ex Parte Motion for Statutory Restraining Order, Appointment of Receivers, and Other Equitable Relief, appointing Mr. Hafen as Temporary Receiver.

4878-4522-7364

24. On November 17, 2018, this Court entered an Order Appointing Receiver and Staying Litigation (the "Appointment Order"), appointing Mr. Hafen as permanent Receiver.

25. Pursuant to the Appointment Order, the Receiver was to take control of all property of the Receivership Estate, wherever located.

26. The Receiver was further authorized to initiate suit to recover any and all property of the Receiver Estate in the possession of third parties.

27. Since the entry of the Appointment Order, preliminary injunctions have entered as to all Receivership Defendants.

## **THE FRAUDULENT PONZI SCHEME**

28. For over thirty years, Gaylen Dean Rust ("Rust") owned and operated RRC, a specialty coin shop in Salt Lake City, Utah, dealing in rare coins, precious metals, and other memorabilia.

29. From at least 2008, Rust also operated a massive Ponzi scheme through which he and others defrauded over 430 individuals out of over $200 million.

30. The Receivership Defendants promoted the Silver Pool as an exclusive investment opportunity through which individual investors both contributed money and precious metals and recruited their friends and family to invest as word spread about the investment returns the Receivership Defendants were purportedly generating.

31. The Receivership Defendants told investors, purchasers, and prospective investors that they were using the money contributed to the Silver Pool to purchase and store physical silver for investment.

4878-4522-7364

32. The Receivership Defendants claimed to use funds contributed to the Silver Pool to purchase physical silver which was then to be stored at Brinks' storage facilities in Salt Lake City, Utah and Los Angeles, California.

33. The Receivership Defendants claimed they generated profits for investors by selling physical silver held in the Silver Pool when markets began to decline and, after such a decline, they used the profits from the sale to purchase a larger quantity of silver at a lower price.

34. Through this process, the Receivership Defendants claimed they were able to consistently increase the number of silver ounces held in the Silver Pool and, consequently, increase the value of each investor's share of the Silver Pool.

35. The Receivership Defendants further represented that they were able to consistently sell silver at higher prices and purchase silver back at low prices because they had advance knowledge of when market prices would decline. Specifically, Rust claimed that he received information from an analyst at a large global bank when the bank and other large market participants planned to sell large quantities of physical silver, thereby driving down prices.

36. The Receivership Defendants told investors they could generate high rates of return for the Silver Pool, often representing that they were able to generate consistent returns of twenty to twenty-five percent. The Receivership Defendants told some investors that they had consistently generated returns as high as forty percent between 2013 and 2018.

37. The Receivership Defendants represented that they had approximately $80 million in physical silver stored at Brinks' facilities in Utah and California.

4878-4522-7364

38. The Receivership Defendants' representations were false. The Receivership Defendants did not store significant quantities of silver at any Brinks facility.

39. Instead, the Receivership Defendants misappropriated funds invested in the Silver Pool and other physical silver that they sold in the manner of a Ponzi scheme. Specifically, after receiving a new deposit into the Silver Pool or funds from a silver purchaser, Receivership Defendants made payments to other investors from the same bank account without ever transferring funds to or from a trading account or otherwise purchasing silver or other precious metals.

40. Additionally, the Receivership Defendants transferred money contributed by Silver Pool investors to other entities controlled by Rust, including but not limited to R Legacy Entertainment, R Legacy Racing, and R Legacy Investments.

41. None of these other entities owned any trading or similar accounts used to buy or sell silver or other precious metals and neither had a legitimate right to funds sourced from Silver Pool investors.

## GUYON'S INVESTMENTS WITH RECEIVERSHIP ENTITIES

42. Guyon represented Gaylen Rust and certain of the Receivership Defendants as an attorney in various matters. He did not have a written attorney agreement with Gaylen Rust or any of the Receivership Entities.

43. Guyon did not provide the Receivership Defendants written bills for professional services.

44. Guyon regularly provided legal services to the Receivership entities over a long period of time.

45. Gaylen Rust made an oral agreement with Guyon to buy silver bullion to be earmarked and held on behalf of Guyon (the "Silver Agreement"). According to the Silver Agreement. Gaylen Rust had authority to make purchases and sales on behalf of Guyon at his sole discretion. These purchases and sales to be made were based on fluctuations of the silver market, *i.e.*, buy in a descending market and sell in an ascending one.

46. Gaylen Rust told Guyon that, because of his business connections and experience in precious metals, he was able to profit from fluctuations in the silver market.

47. Gaylen Rust told Guyon that he would maintain the purchased silver on site in Salt Lake City or in another repository.

48. According to the Silver Agreement, only one-half of the accumulated silver was to be available for sale, and the other one-half was to remain in storage until physically delivered to Guyon or liquidated by Guyon's specific decision or order. Gaylen Rust stated that this arrangement acted as a hedge against risks in the silver market.

49. In 2012 Gaylen Rust told Guyon that Rust had similar agreements with approximately 40 other individuals.

50. Guyon received periodic statements from the Receivership Defendants that reflected putative transactions in Guyon's silver account. Those statements were received monthly at first and then Guyon received regular statements every six to nine months.

51. Gaylen Rust told Guyon that, once silver bullion was purchased, one-half of the accumulated silver bullion was to be available for sale, and the other half was to remain in storage until physically delivered to Guyon or liquidated by Guyon's specific decision or order. Gaylen Rust explained that this arrangement was a hedge

4878-4522-7364

against risks in the silver market, i.e., if there was a loss, only one-half of the silver bullion owned by Guyon would be affected.

52. Guyon's funds for silver purchases were commingled with the purchases of other individuals.

53. The Receivership Defendants transferred money and assets to Guyon that exceeded the amount of his investment.

54. The Receivership Defendants transferred money and assets to Guyon with the actual intent to hinder, delay, or defraud creditors.

55. The Receivership Defendants transferred money and assets to Elisabeth Guyon who did not fund an investment in the Silver Pool.

56. The Receivership Defendants transferred money to Elisabeth Guyon with the actual intent to hinder, delay, or defraud creditors.

57. The Receivership Entities transferred money to Russ and Kathleen Mouritsen that exceeds the amount of their investment.

58. The Receivership Defendants transferred money and assets to Russ and Kathleen Mouritsen with the actual intent to hinder, delay, or defraud creditors.

59. The Receivership Defendants transferred money to Bert and Katherine Van Uitert that exceeds the amount of their investment.

60. The Receivership Defendants transferred money and assets to Bert and Katherine Van Uitert with the actual intent to hinder, delay, or defraud creditors.

61. The Receivership Defendants transferred money to Peter W. Guyon, Jr. who did not fund an investment in the Silver Pool.

4878-4522-7364

62. The Receivership Defendants transferred money to Peter W. Guyon, Jr. with the actual intent to hinder, delay, or defraud creditors.

63. The Receivership Defendants transferred money to Flash 1 TV, Inc., which did not fund an investment in the Silver Pool.

64. The Receivership Defendants transferred money to Flash 1 TV, Inc. with the actual intent to hinder, delay, or defraud creditors.

65. The Receivership Defendants transferred money to Silver Spoon Delivery, Inc., which did not fund an investment in the Silver Pool.

66. The Receivership Defendants transferred money to Silver Spoon Delivery, Inc., with the actual intent to hinder, delay, or defraud creditors.

67. During the time he made a portion of his investments or purchases and in which he acted as counsel for the Receivership Defendants, Guyon was aware of circumstances which would place a reasonable person on inquiry of the Receivership Defendants' fraudulent purpose.

68. Had Guyon conducted a diligent inquiry, he would have discovered the Receivership Defendants' fraudulent purpose.

**FIRST CLAIM FOR RELIEF**
**(Voidable or Fraudulent Transactions)**

69. Plaintiff hereby incorporates paragraphs 1 through 68 of the preceding Complaint by reference.

70. The Receivership Defendants operated the Silver Pool as a Ponzi scheme.

71. Guyon Defendants received payments totaling hundreds of thousands of dollars from the Receivership Defendants.

72. Because the Receivership Defendants operated the Silver Pool as a Ponzi scheme, as a matter of law, the transfers to Guyon Defendants were made with the intent to hinder, delay, or defraud creditors.

73. In addition, the transfers to the Guyon Defendants were made at a time when the Receivership Defendants were insolvent, and Receivership Defendants did not receive reasonably equivalent value in exchange for the transfers.

74. At a minimum, Guyon Defendants must return the amount they received from the Receivership Defendants less the amount they invested.

75. Because Guyon was on inquiry notice of the Receivership Defendants' fraudulent purpose, he must return all the money and assets sent to him by the Receivership Defendants with no offset for the amount he invested.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

76. Plaintiff hereby incorporates paragraphs 1 through 68 of the preceding Complaint by reference.

77. The Receivership Defendants conferred a benefit upon the Guyon Defendants when the Guyon Defendants received payments from the Silver Pool.

78. Guyon Defendants knew and understood the benefit they received.

79. It would be unjust, under the circumstances, to allow the Guyon Defendants to retain payments from the Silver Pool more than their individual contributions.

**WHEREFORE**, Plaintiff prays as follows:

    A.    That the Plaintiff be awarded damages against Guyon Defendants in an amount to be determined at trial, plus prejudgment and post judgment interest, and costs; and

B.      For such other relief as the Court may allow.

DATED this 21st day of June 2023.

                                          PARR BROWN GEE & LOVELESS, P.C.

                                          By: */s/ Thomas M. Melton*
                                                Joseph M.R. Covey
                                                Thomas M. Melton
                                                Robert G. Wing
                                                Claire M. McGuire

                                          *Attorneys for Jonathan O. Hafen, Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June 2023, a true and correct copy of the foregoing **COMPLAINT** was served via email on the following:

Peter W. Guyon,
The Guyon Group,
Elizabet Guyon,
Dr. Peter W. Guyon Jr.,
Russell and Kathleen Mouritsen,
Bert and Catherin Van Uitert,
525 E. 100 S., Ste. 306
Salt Lake City, UT 84014
peter@guyonlaw.com

/s/ Thomas M. Melton

4878-4522-7364