IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as court-appointed Receiver,<br><br>Plaintiff,<br><br><br>v.<br><br><br>PETER W. GUYON, et al.,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION DENYING MOTIONS TO DISMISS AND MOTION TO CERTIFY**<br><br><br>Case No. 1:23-cv-74-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Before the court is a bevy of motions filed by Defendant Peter W. Guyon, on behalf of himself and the other Defendants in this action, asking the court either to dismiss or delay the proceedings against them. Although several motions were originally styled as motions for declaratory relief, Mr. Guyon has since clarified that these motions should be considered as motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. (See, e.g., Defs.' Reply, ECF No. 17 at ¶ 1 (instructing the court to treat the motion as one filed under Rule 12(b)(6) and to disregard any reference to Rule 57).)

The Defendants' motions include: 1) a motion to dismiss for lack of subject matter jurisdiction (ECF No. 3); 2) a motion to dismiss for failure to state a claim on the ground that Mr. Guyon did not receive fraudulent transfers from the entities operating the Ponzi scheme (ECF No. 4); 3) a motion to dismiss on the ground that the action is barred by the statute of limitations (ECF No. 5); 4) a motion to dismiss on the ground that the Receiver lacks standing to

1

bring the action (ECF No. 19); and 5) a motion to certify four questions to the Utah Supreme Court (ECF No. 8).

These motions generally seek to call into question issues that have long been established in litigation involving the Rust Rare Coin Ponzi scheme.  The court reiterates that: 1) it has jurisdiction to find the existence of a Ponzi scheme and to appoint a Receiver to recover assets lost by Ponzi-scheme investors; 2) the Receiver has the authority to bring state-law claims against investors who received funds in excess of the principal they transferred to the entities operating the Ponzi scheme; and 3) the Receiver has the authority to enter into tolling agreements with potential net winners from the fraudulent scheme while the Receiver investigates the financial and business affairs of the Ponzi-scheme entities.

Because Mr. Guyon raises no meritorious arguments in his motions, these motions are all denied.

## BACKGROUND

On November 13, 2018, the Commodity Futures Trading Commission (CFTC) and the Utah Division of Securities (UDOS) initiated a civil enforcement action against Rust Rare Coin, Inc. (Rust Rare Coin), Gaylen Dean Rust, Denise Gunderson Rust, Joshua Daniel Rust, Aleesha Rust Franklin, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, the Receivership Defendants), alleging that the Receivership Defendants were running a Ponzi scheme.  The Ponzi scheme operated as follows: the Receivership Defendants told investors that their money would be used to purchase physical silver that would be traded for a profit (a scheme referred to as the Silver Pool), when in fact there was no Silver Pool and only a minimal inventory of silver.  Instead, the Receivership Defendants used the money from new investors and purchasers to pay fictitious returns and make other payments to earlier investors

and purchasers.  The Receivership Defendants fraudulently solicited over $200 million from investors using these tactics.  (See Compl., Commodity Futures Trading Comm'n v. Rust, ECF No. 1 in No. 2:18-cv-892.)  The United States Attorney for the District of Utah later charged Gaylen Dean Rust, Denise Gunderson Rust (Mr. Rust's wife at the time), and Joshua Daniel Rust (their son) with various crimes related to the operation of the Ponzi scheme; they all eventually pled guilty.  (See Indictment, Judgments, United States v. Rust, ECF Nos. 1, 93, 156, 168 in No. 2:19-cr-164.)

In the civil enforcement action, this court appointed Jonathan O. Hafen (the Receiver) as Temporary Receiver for the assets of the Receivership Defendants on November 15, 2018.  (ECF No. 22 in No. 2:18-cv-892.)  On November 27, 2018, the court entered an Order Appointing Receiver and Staying Litigation (Receivership Order) (ECF No. 54 in No. 2:18-cv-892), which continued the Receiver's appointment until further order of the court.  Among other duties, the Receiver was charged with investigating the financial and business affairs of the Receivership Defendants and recovering all assets of the Receivership estate—including net winnings that were paid out to investors as part of the fraudulent scheme.  (Id. ¶¶ 7, 41–42.)

While the Receiver was investigating the financial affairs of the Receiver Defendants, he entered into several tolling agreements with potential net winners; these agreements tolled the statute of limitations on claims that could be brought against investors who had profited from the fraudulent scheme.  The Receiver executed a tolling agreement with the Defendants in this action that became effective November 4, 2019.  (Tolling Agreement, Ex. 1 to Receiver's Resp. to Mot., ECF No. 11-1.)  Under the terms of that agreement, the tolling period ended ten days after the Defendants received a termination notice.  (Id. ¶ 1.)  The Receiver terminated the tolling agreement on June 16, 2023, and filed this action five days later.  (See Compl., ECF No. 2.)

3

In the Complaint filed in this action, the Receiver alleges that Mr. Guyon and the other Defendants all received funds from the Receivership entities.  Specifically, the Receiver alleges that "Gaylen Rust made an oral agreement with Guyon to buy silver bullion to be earmarked and held on behalf of Guyon[.]"  (<u>Id.</u> ¶ 45.)  The Receiver further alleges that the Receivership Defendants transferred money and assets to Mr. Guyon and the other Defendants in an amount that exceeded the amount of their investment.  (<u>Id.</u> ¶¶ 53–66.)  Finally, the Receiver alleges that Mr. Guyon was "aware of circumstances which would place a reasonable person on inquiry of the Receivership Defendants' fraudulent purpose."  (<u>Id.</u> ¶ 67.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint fails to state a claim upon which relief can be granted.  The court must accept all well-pled factual allegations as true and construe them in the light most favorable to the nonmoving party.  <u>Strauss v. Angie's List, Inc.</u>, 951 F.3d 1263, 1267 (10th Cir. 2020).  But that rule does not apply to legal conclusions.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009).  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."  <u>Kan. Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

## ANALYSIS

The court addresses each of Mr. Guyon's motions in turn.

I.      **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

First, Mr. Guyon asserts that the court lacks subject matter jurisdiction over this action. Essentially, Mr. Guyon argues that the court has no federal question jurisdiction under 28 U.S.C. § 1331 because the Receiver brings his fraudulent transfer claims against the Defendants under Utah's Uniform Fraudulent Transfer Act (UFTA) and its successor statute, the Uniform Voidable Transactions Act (UVTA).  But a lawsuit to recover fraudulent transfers to third parties from the operators of a Ponzi scheme is properly before the court under the court's ancillary jurisdiction.

The Supreme Court has long recognized that a receiver appointed to "accomplish the ends sought and directed by" a suit with a proper basis for federal jurisdiction may proceed in ancillary jurisdiction on claims with no other independent basis for federal jurisdiction.  See Pope v. Louisville, New Albany & Chicago Ry. Co., 173 U.S. 573, 577 (1899).  Courts have used this jurisdiction to permit ancillary suits against Ponzi-scheme transferees.  See, e.g., Scholes v. Lehmann, 56 F.3d 750, 753 (7th Cir. 1995) (holding that federal jurisdiction over a claim under the Illinois Uniform Fraudulent Transfers Act is based on the ancillary jurisdiction of the federal courts); see also Klein v. Cornelius, No. 11-cv-1159, 2012 WL 2261114, at *3–4 (D. Utah June 15, 2012) (finding that the appointment of a receiver was proper under the Commodity Exchange Act and that the court had subject matter jurisdiction over ancillary actions seeking to recover fraudulent transfers to third-party investors).

The Receiver brings this action under state law to execute his obligations under the Receivership Order, an order that this court issued in the underlying civil enforcement action and for which federal jurisdiction was proper.  The Receiver is therefore authorized to proceed in this action under the court's ancillary jurisdiction.

**II.    Motion to Dismiss for Failure to State a Claim**

Next, Mr. Guyon argues that the Receiver fails to state a claim against him—an argument he repeats in multiple motions—because his transactions with the Receivership Defendants did not involve the Silver Pool.  Mr. Guyon suggests that his "agreement to purchase silver bullion" from the Receivership Defendants is qualitatively different from any transactions with the Silver Pool.  (Defs.' Mot. Dismiss, ECF No. 4 at 2.)

The court is not persuaded.  The Receiver has alleged that the Receivership Defendants ran a Ponzi scheme (ECF No. 2 at ¶¶ 28–41), that the Defendants in this action received payments from the Silver Pool operated by the Ponzi scheme (id. ¶¶ 53–66), and that the payments Defendants received exceeded the amount of their investments and were made with actual intent to defraud creditors (id.).  Accepting the Receiver's well-pled allegations as true,[1] Mr. Guyon's self-admitted investments in "silver bullion purchases … unregulated by the CFTC" (see Defs.' Mot. Dismiss, ECF No. 3 at 2) and his receipt of funds from a company that was operating as a Ponzi scheme are sufficient allegations to state a claim against him under the UFTA and UVTA.

The court has previously denied a motion to dismiss in another ancillary action to the underlying RRC case in which the defendants made a nearly identical argument:

> [T]he Receiver has alleged the existence of a Ponzi scheme and unlawful transfers from that scheme to Defendants.  The exact nature and timeframe of Defendants' investments and pay-outs will be developed through discovery as the case proceeds, and at the appropriate stage, Defendants may argue that their relationship with Rust Rare Coin had nothing to do with the Silver Pool.  For now, Defendants are sufficiently on notice of the Receiver's claims.

---

[1] As this court has previously noted, "at least two decisions from this district have held that UFTA cases are not subject to Rule 9(b) pleading …."  Hafen v. Evans, No. 2:19-cv-895, 2020 WL 13178042, at *1 (D. Utah Feb. 27, 2020) (citations omitted).  The court therefore declines to apply any heightened pleading requirements.

Hafen v. Evans, No. 2:19-cv-895, 2020 WL 13178042, at *2 (D. Utah Feb. 27, 2020).

The court similarly finds that the Receiver has adequately pled his fraudulent transfer and unjust enrichment claims and that Mr. Guyon and the other Defendants are sufficiently on notice of the claims against them.  Accordingly, the court denies their motion to dismiss for failure to state a claim.

### III.   Motion to Dismiss Action as Time-Barred by the Statute of Limitations

Next, Mr. Guyon argues that this action is barred by the statute of limitations.  Citing 28 U.S.C. § 2462, Mr. Guyon asserts that any transfers between himself, the other Defendants, and the Receivership Defendants occurred over five years ago.  He also maintains that the tolling agreement he signed with the Receiver has no legal force because it was not signed by the CFTC.

These arguments are not persuasive.  First, Mr. Guyon cites the wrong statute, as 28 U.S.C. § 2462 does not apply to claims by receivers.  See U.S. Small Bus. Admin. for Cardinal Growth, L.P. v. McInerney, No. 16-cv-7099, 2017 WL 1710271, at *3 (N.D. Ill. May 3, 2017) (noting that the ten-year statute of limitations under Illinois law for breach of contract applies in an action by a receiver, not § 2462).  Instead, the statute of limitations is governed by the UVTA, which provides that claims must be brought no later than four years after a transfer was made or an obligation incurred, Utah Code Ann. §§ 25-6-202(1)(a), 25-6-305(1) or, if later, not later than one year after the transfer or obligation could have reasonably been discovered by the claimant, Utah Code Ann. § 25-6-305(1).

Under the UVTA, the statute of limitations is tolled for as long as an entity is controlled or dominated by the wrongdoers.  Klein v. Cornelius, 786 F.3d 1310, 1322 (10th Cir. 2015).  In the underlying action, RRC was controlled by the Ponzi-scheme operators until the court appointed the Receiver on November 18, 2018.  The Receiver thereafter had one year to file

fraudulent transfer claims.

But the Receiver entered into a tolling agreement with Mr. Guyon and the other Defendants under which the Receiver agreed not to file an action against the Defendants until he had more fully investigated whether any of the Defendants were net winners from the Ponzi scheme.  When a tolling agreement is entered into before the statute of limitations period expires, the tolling agreement remains effective.  <u>Strong as Tr. of Consol. Legacy Debtors Liquidating Tr. v. Cochran</u>, No. 2:14-cv-788-TC-EJF, 2019 WL 4601636, at *21 (D. Utah Sept. 23, 2019), <u>clarified on denial of recons.</u>, 2019 WL 7290835 (D. Utah Dec. 30, 2019).  The tolling agreement in this action was entered into on November 8, 2019, and signed by the Receiver on November 11, 2019, before the statute of limitations expired.

There is no requirement that the CFTC sign any tolling agreements executed by the Receiver.  Under the Receivership Order in the underlying action, the court granted the Receiver all the powers, authorities, rights, and privileges of the officers of the Receivership entities. (ECF No. 54 at ¶ 4 in No. 2:18-cv-892.)  The court also authorized the Receiver to bring any legal actions he deemed necessary or appropriate, and to participate in those legal proceedings. (<u>Id.</u> ¶¶ 7(I), 41–42.)  The Receiver may therefore conduct all aspects of litigation, including entering into a tolling agreement.

Because the Receiver had the authority to sign a tolling agreement with the Defendants, and because a tolling agreement was signed before the relevant statute of limitations expired, the court finds that this action is timely and may proceed.

## IV.   Motion to Dismiss for Lack of Standing

Mr. Guyon filed a second motion to dismiss arguing that the Receiver lacks standing to bring these claims.  The court notes that this motion was untimely, as it was filed on October 20,

2023—over a month after Mr. Guyon filed his first set of motions to dismiss, and well more than 60 days after Mr. Guyon waived service of the summons and complaint on July 20, 2023. (See Receiver's Resp. Second Mot. Dismiss, ECF No. 22 at 5–6); see also Fed. R. Civ. P. 12(a)(1)(A)(ii) (requiring a responsive pleading within 60 days after the request for a waiver was sent where a defendant timely waives service).

The motion also lacks merit. As discussed above, the Receivership Order in the underlying action gave the Receiver the authority to sue the recipients of fraudulent transfers from the Receivership estate under the UFTA and its successor, the UVTA. See Hafen v. Famulary, No. 2:19-cv-627-TC, 2021 WL 229356, at *2) (D. Utah Jan. 22, 2021) ("[A] receiver of an entity which was used to perpetrate a Ponzi scheme has standing to recover fraudulent transfers as though the receiver were a creditor of the scheme." (citing Wing v. Dockstader, 482 F. App'x 361, 363 (10th Cir. 2012))). For the reasons elaborated more fully in the Receiver's response (see ECF No. 22 at 7–9), the cases Mr. Guyon cites are inapposite and do not call into question the Receiver's authority to recover fraudulent transfers.

Both because it is untimely and because it lacks merit, the court denies Mr. Guyon's second motion to dismiss for failure to state a claim.

## V.    Motion to Certify Questions to the Utah Supreme Court

Mr. Guyon moves this court to certify four questions to the Utah Supreme Court. These questions are substantially identical to questions for which this court has previously denied requests for certification in four cases that are ancillary to the Rust Rare Coin litigation. See Hafen v. Muir, No. 2:19-cv-913-TC-DAO, 2022 WL 3542498 (D. Utah Aug. 18, 2022); Hafen v. Taylor, No. 2:19-cv-896-TC-JCB, 2022 WL 3542819 (D. Utah Aug. 18, 2022); Hafen v. Larsen, No. 2:21-cv-743-TC-CMR, 2022 WL 3542499 (D. Utah Aug. 18, 2022); Hafen v. Percell,

No. 2:19-cv-899-TC-DBP, 2022 WL 3542497 (D. Utah Aug. 18, 2022) (collectively, the Certification Cases).

First, Mr. Guyon and the other Defendants ask the court to certify the following question: "Whether under the provisions of [Utah Code Ann.] § 25-6-103, … the Receiver must offer evidence and sustain the burden of proving that the debtor-transferor was insolvent on the date of the transfer, or whether insolvency is presumed."  (Defs.' Mot. Certify, ECF No. 8 at 3.)  That question is merely a reframing of a similar question for which the court denied certification in the Certification Cases: "Whether, under the UVTA, the plaintiff in a case involving a Ponzi scheme must offer evidence proving that the debtor-transferor was insolvent on the date of the transfer, or whether insolvency is presumed as a matter of law[.]"  Muir, 2022 WL 542498, at *2; Taylor, 2022 WL 3542819, at *2; Larsen, 2022 WL 3542499, at *2; Percell, 2022 WL 3542497, at *2.

Second, Mr. Guyon and the other Defendants ask the court to certify the following question:

> Whether "value" in [Utah Code Ann.] section 25-6-104 is limited to the amount of the principal portion of a debt or of the original investment and excludes satisfaction of the interest portion of a debt or a contractual obligation to pay a profit, notwithstanding [Utah Code Ann.] § 25-6-104(1) which includes in the definition of "value" satisfaction of an antecedent debt, and makes no distinction between the principal portion and the interest portion of the debt or between the amount of the original investment and a contractual profit.

(ECF No. 8 at 3.)  The petitioners in the Certification Cases sought certification of a nearly identical question:

> Whether "reasonably equivalent value" under the UVTA is limited to the amount of the principal portion of a debt or of the original investment and excludes satisfaction of the interest portion of a debt or a contractual obligation to pay a profit, notwithstanding Utah Code Ann. § 25-6-104(1), which includes in the definition of "value" the satisfaction of an antecedent debt, and makes no distinction between the principal portion and the interest portion of the debt or

between the amount of the original investment and a contractual profit.

<u>Muir</u>, 2022 WL 3542498, at *2; <u>Larsen</u>, 2022 WL 3542499, at *2; <u>Percell</u>, 2022 WL 3542497,

at *2; <u>see also</u> <u>Taylor</u>, 2022 WL 3542819, at *2 (asking similar question).  The court denied that

request.

Third, Mr. Guyon and the other Defendants ask the court to certify the following

question: "Whether 'value' means something different from what it means in allegedly 'garden

variety' fraudulent transfer cases that do not arise out of a so-called Ponzi scheme."  (ECF No. 8

at 3.)  In the Certification Cases, the petitioners requested that the court certify the same

question: "Whether 'value' under the UVTA means something different from what it means in

fraudulent transfer cases that do not arise out of a Ponzi scheme."  <u>Muir</u>, 2022 WL 3542498,

at *2; <u>Larsen</u>, 2022 WL 3542499, at *2; <u>Percell</u>, 2022 WL 3542497, at *2.  The court denied that

request.

Finally, Mr. Guyon and the other Defendants seek certification of a fourth question:

"Whether under the provisions of [Utah Code Ann.] § 25-6-202, … the Receiver must offer

evidence and sustain the burden proving that transfers made in furtherance of an alleged Ponzi

scheme were made with fraudulent intent, or whether fraudulent intent is presumed."  (ECF

No. 8 at 3.)  The petitioners in the Certification Cases requested certification of a nearly identical

question: "Whether, under the UVTA, the plaintiff in a case involving a Ponzi scheme must offer

evidence proving that the debtor-transferor made the transfer with actual intent to hinder, delay

or defraud, or whether such intent is presumed as a matter of law[.]"  <u>Muir</u>, 2022 WL 3542498,

at *2; <u>Taylor</u>, 2022 WL 3542819, at *2; <u>Larsen</u>, 2022 WL 3542499, at *2; <u>Percell</u>, 2022 WL

3542497, at *2.  The court denied that request.

Given these similarities, Mr. Guyon merely seeks to certify questions for which the court

has already denied certification.  Mr. Guyon offers no compelling arguments about why certification is now appropriate.  Even if some states have rejected certain presumptions in Ponzi scheme cases, this court continues to be bound by the "clear path" that the Tenth Circuit illuminated in Klein.  Muir, 2022 WL 3542498, at *3; Taylor, 2022 WL 3542819, at *3; Larsen, 2022 WL 3542499, at *3; Percell, 2022 WL 3542497, at *3.  Moreover, the court agrees with the Receiver that, despite amending the UFTA and UVTA several times, the Utah Legislature has never shown disagreement with the federal courts' interpretation of Utah's fraudulent transfer laws.  (See Receiver's Resp. Mot. Certify, ECF No. 15 at 16–18.)

Based on the court's reasoning in the Certification Cases, and for the reasons additionally outlined by the Receiver about why Mr. Guyon fails to meet the standard for certification (see id. at 18–23), the court denies this motion.

## VI.   Motion for Entry of Default

Finally, Mr. Guyon moves the court to strike[2] the Receiver's response to Mr. Guyon's Motion to Dismiss Action as Time-Barred by the Statute of Limitations.  But the Receiver's response was timely because, as discussed above, Mr. Guyon's motion was properly construed as a motion to dismiss.  Under this court's local rules, the Receiver had 28 days to file his response and did so within that time period.  See DUCivR 7-1(a)(4)(A)(iii).  Accordingly, the court denies Mr. Guyon's motion.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 3) is

---

[2] The Defendants requested entry of default, but entry of default is not appropriate in these circumstances.  Accordingly, the court treats the motion as a motion to strike.

DENIED.

      2.      The Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 4) is

DENIED.

      3.      The Defendants' Motion to Dismiss Action as Time-Barred by the Statute of

Limitations (ECF No. 5) is DENIED.

      4.      The Defendants' Motion for Certification (ECF No. 8) is DENIED.

      5.      The Defendants' Motion for Entry of Default (ECF No. 9) is DENIED.

      6.      The Defendants' Second Motion to Dismiss for Failure to State a Claim (ECF

No. 19 is DENIED.

      DATED this 6th day of May, 2024.

                    BY THE COURT:

                    Tena Campbell
                    United States District Judge