IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as court-appointed Receiver,<br><br>Plaintiff,<br>v.<br><br>PETER W. GUYON, an individual; PETER W. GUYON PC RETIREMENT PLAN; PETER W. GUYON PC ATTORNEY AT LAW; DR. PETER W. GUYON, JR., an individual; ELISABETH GUYON, an individual; BERT VAN UITERT, an individual; CATHERINE VAN UITERT, an individual; SILVER SPOON DELIVERY; and FLASH 1 TV,<br><br>Defendants. | **MEMORDANDUM DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND ORDERS**<br><br>Case No. 1:23-cv-00074-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

On March 12, 2026, the court granted a motion for summary judgment filed by Plaintiff Jonathan O. Hafen, the court-appointed Receiver over the assets of Rust Rare Coin, Inc. (RRC), Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, the Receivership Defendants). (See Mem. Decision & Order, Mar. 12, 2026, ECF No. 96.) In that order, the court also denied two motions for summary judgment filed by Defendants Peter W. Guyon, Peter W. Guyon PC Attorney at Law (Guyon PC), and Peter W. Guyon PC Retirement Plan (the Plan) (collectively, the Guyon entities).[1] (See

[1] Although the court generally does not permit the same parties to file multiple motions for summary judgment, the court exercised its discretion to consider the arguments in both motions, rather than striking the motions and requiring consolidation. See DUCivR 56-1(b).

id.) Concurrently, the court entered judgment in favor of the Receiver and against the Guyon entities, jointly and severally, in the amount of $799,895.91. (Judgment, ECF No. 97.) That judgment represented $585,328.80 in fraudulent and voidable transfers and $214,567.11 in prejudgment interest. (ECF No. 96 at 23.)

The Guyon entities now move the court to reconsider its March 12, 2026 order and to alter or amend the judgment issued against them. (Defs.' Mot. Am. J., ECF No. 98.) The Guyon entities make two arguments. First, they suggest that the court should not have entered summary judgment because the Receiver only moved for partial summary judgment. (Id. at 2.) The Guyon entities did not respond to the Receiver's arguments or otherwise defend this position in their Reply, so it is unclear whether they have abandoned it. (See Defs.' Reply, ECF No. 100.) Regardless, the judgment against the Guyon entities afforded the Receiver complete relief against those parties, and the court dismissed the remaining parties and claims for the reasons stated in the court's order. (See ECF No. 96 at 22.) The court therefore finds no reason to reconsider its previous order on this ground.

Second, the Guyon entities assert that the court improperly imposed joint and several liability against them even though the Receiver did not present a formal analysis of alter ego liability. (ECF No. 98 at 2.) The Guyon entities do not object to the court's findings about the total amount of liability—namely, that the three Guyon entities (Mr. Guyon, Guyon PC, and the Plan) collectively contributed $350,223.20 to the investment scheme and received disbursements of $935,552, thereby resulting in a net gain of $585,328.80. (See ECF No. 96 at 21.) Instead, the Guyon entities object that neither the Receiver nor the court properly analyzed the factors under Utah state law that a court should consider before piercing the corporate veil and imposing a company's debts on an individual. See Colman v. Colman, 743 P.2d 782, 786 (Utah Ct.

App. 1987) (listing eight factors).

But the court was not required to pierce the corporate veil under Utah law because its treatment of the Guyon entities as an investment group was authorized under the Utah Uniform Voidable Transactions Act (UVTA) and, moreover, was a proper exercise of the court's equitable powers. The Tenth Circuit has recognized that "the district court has broad powers and wide discretion to determine relief in an equity receivership. This discretion derives from the inherent powers of an equity court to fashion relief." S.E.C. v. Vescor Capital Corp., 599 F.3d 1189, 1194 (10th Cir. 2010) (cleaned up). When a district court creates a receivership, the receivership's focus is "to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." Id. (cleaned up). Accordingly, the court must be mindful not to waste the assets of the receivership, thereby resulting in less relief for the victims of the investment scheme. And "in fashioning relief in an equity receivership, a district court has discretion to summarily reject formalistic arguments that would otherwise be available in a traditional lawsuit." Broadbent v. Advantage Software, Inc., 415 F. App'x 73, 78 (10th Cir. 2011). In its March 12, 2026 order, the court found that any attempted segregation of funds between Mr. Guyon and Guyon would be exactly this sort of needless, overly formalistic, and wasteful analysis. (See ECF No. 96 at 16–18.)

But having been asked to reconsider its order, the court analyzes each of the Guyon entities as a separate entity. This analysis confirms that there is no need to alter or amend the court's judgment.

Beginning with Mr. Guyon's individual liability, Mr. Guyon does not object to the court's finding that, with the exception of two checks totaling $20,000, the remainder of the payments from the Receivership Defendants were made out in Mr. Guyon's name. (See ECF

No. 96 at 16.) As the Receiver notes, the UVTA allows a judgment for a voidable transaction to be entered either against "the first transferee of the asset or the person for whose benefit the transfer was made" or "an immediate or mediate transferee of the first transferee[.]" Utah Code Ann. § 25-6-304(2)(b). If Mr. Guyon wishes to argue that judgment against him as the first transferee is inappropriate because he was a mere conduit, he bears the burden of proving that defense. See, e.g., Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection."). And as the court previously noted, the only evidence Mr. Guyon submitted to show that the funds he received should be properly attributed to Guyon PC was a declaration stating his subjective intent, unsupported by any documents or extrinsic evidence, "to act as agent or nominee to Guyon PC to receive any payments or trades from Rust and/or RRC on behalf of Guyon PC not by myself individually." (Decl. Peter Guyon ¶ 16, ECF No. 88-2.) That assertion is insufficient to raise a genuine dispute about whether Mr. Guyon was the initial transferee of $915,552.[2] And because Mr. Guyon did not individually contribute any funds to the investment scheme (id.), the treatment of Mr. Guyon as a separate entity would result in a judgment against him individually for $915,552 plus prejudgment interest.

Turning to an individual analysis of Guyon PC, the law firm would, at first glance, be a net loser in the investment scheme. That is because Guyon PC made contributions of

---

[2] This amount represents the total disbursements of $935,552 received by the Guyon entities minus the $20,000 in checks that were made out specifically to Guyon PC. (See ECF No. 96 at 16.) In its March 12, 2026 order, the court provided a similar account of how separate treatment would impact Mr. Guyon, but the court considered whether Mr. Guyon had raised the possibility that an additional $163,000 could be attributed to Guyon PC on the theory that Mr. Guyon deposited checks totaling that amount in a business account for Guyon PC. (Id. at 16–17.) The court agrees with the Receiver that such treatment is unnecessary because it is undisputed that Mr. Guyon was the initial transferee of these funds. Under Utah law, the Receiver may therefore recover these funds from him individually.

$303,898.20 and received only $20,000 in return.[3] Accordingly, Guyon PC could claim losses of $283,898.20 and seek to recover those losses from the Receivership Estate. But this analysis disregards any subsequent transfers of funds that Mr. Guyon made to Guyon PC. Mr. Guyon states that: 1) he deposited $163,000 of funds "made payable to 'Peter Guyon'" in a business account for Guyon PC; 2) he deposited $364,500 "made payable to Peter Guyon" in an account in the name of "Peter W. Guyon" that he "used both as a business account and personal account"; 3) documents for $73,000 indicated "payment to Peter Guyon that reflect no deposit information but that Guyon PC claims to have been received by Guyon PC through Peter Guyon as its agent and/or nominee"; and 4) he received $108,500 "in cash payments to Peter Guyon that Guyon PC claims to have been received by Guyon PC through Peter Guyon as its agent and/or nominee." (Guyon Decl. ¶¶ 24, 26.) Guyon PC therefore affirmatively claims to have received at least $709,000 from the investment scheme, far more than Guyon PC contributed. Moreover, the Guyon entities have presented no evidence that <u>any</u> of the $935,552 in disbursements were unavailable for the law firm's benefit. The record, including Mr. Guyon's own statements, indicates that Mr. Guyon had total discretion about whether he deposited those funds in the law firm's business account or Mr. Guyon's personal account. As explained above, Utah law permits the Receiver to recover from either the initial transferee or a subsequent transferee. <u>See</u> Utah Code Ann. § 25-6-304(2)(b). As a result, judgment against Guyon PC for $631,653.80 plus prejudgment interest would be appropriate.[4]

---

[3] In its March 12, 2026 order, the court attributed to Guyon PC all $350,223.20 of the contributions made by the Guyon entities to the investment scheme. (<u>See</u> ECF No. 96 at 17.) That is because the court included two payments from the Plan: a check for $19,575 and a payment for $26,750. (<u>See</u> <u>id.</u> at 20.) Segregating these contributions between Guyon PC and the Plan results in contributions of $303,898.20 from Guyon PC and contributions of $46,325 from the Plan.

[4] This amount represents $935,552 in disbursements minus $303,898.20 in contributions.

Finally, the Plan made contributions of $46,325 and received nothing in return. (See Decl. Jeffrey Shaw at 62, 66, ECF No. 86-4.)[5] As a result, the Plan could claim losses of $46,325 from the Receivership Estate. But the Plan failed to file such a claim with the Receiver. (See Claim Forms, App'x D to Receiver's Mot. Summ. J., ECF No. 86-5 (reflecting claimed losses from Mr. Guyon and Guyon PC, but nothing from the Plan).) As a result, the Plan would receive nothing.

In sum, treating the Guyon entities individually would result in the following outcomes: 1) a judgment against Mr. Guyon personally for $915,552 plus prejudgment interest; 2) a judgment against Guyon PC for $631,653.80 plus prejudgment interest; and 3) nothing for the Plan.

In comparison, the court's treatment of the Guyon entities as a single investment group results in a judgment of $585,328.80 plus prejudgment interest against all the Guyon entities, a judgment for which they are jointly and severally liable. This treatment is more favorable to both Mr. Guyon and Guyon PC. And because the UVTA allows the Receiver to recover payments from either the initial or subsequent transferee of the funds, and the court's judgment is appropriate against both Mr. Guyon and Guyon PC. The Guyon entities are therefore mistaken that the court imposed the debts of Guyon PC on Mr. Guyon individually. Indeed, both entities receive a discount under the court's treatment, with Mr. Guyon as an individual receiving a substantial discount.

It is true that treating the Guyon entities as a group results in less favorable treatment for the Plan, who is a net loser in the investment scheme. But tellingly, the Guyon entities have not objected to the judgment on behalf of the Plan. Instead, Mr. Guyon argues that "the court cannot

---

[5] See also supra note 3.

summarily impose joint and several liability upon Guyon without the Receiver's having first pled and proved alter ego ...." (ECF No. 98 at 2 (first emphasis added).) Moreover, Mr. Guyon asserts that that the Plan "did not actually exist as a legal entity, and even if it did, it had no assets and was promptly abandoned." (Guyon Decl. ¶ 14 n.1.) Including the Plan as part of a Guyon investment group reduces the total judgment against the Guyon entities by $46,325 (i.e., the amount of the Plan's contributions), thereby resolving any doubts about the Plan's contributions in the Guyon entities' favor. If the Plan never existed or no longer exists, then imposing joint and several liability against the Plan is harmless. But to the extent that Mr. Guyon is mistaken and the Plan continues to have independent legal status, it would be inequitable to the victims of the investment scheme to reduce the Guyon entities' judgment by the Plan's contributions without also making the Plan jointly and severally liable for that judgment. As applied to the Plan, joint and several liability is therefore a proper exercise of the court's equitable powers.

For these reasons, the Guyon entities have failed to show that the court was required to pierce the corporate veil in this matter. To the extent there was any confusion about whether RRC funds went to Peter Guyon, the individual, or Peter Guyon, the sole shareholder, director, and officer of Guyon PC, it was Mr. Guyon's own actions that led to this uncertainty. And because there is no genuine dispute that both entities had access to the funds, no further segregation of funds was necessary under the UVTA and the court's imposition of joint and several liability for the full judgment was appropriate. Mr. Guyon cannot delay judgment or request a costly trial to untangle a Gordian knot of his own creation.

**ORDER**

For the reasons stated above, the court DENIES the Motion for Reconsideration and to

Alter or Amend Orders. (ECF No. 98.)

DATED this 7th day of October, 2026.

BY THE COURT:

Tena Campbell

Tena Campbell
United States District Judge